Case number 21-7067, Anne Jean Cannon, deceased in the estate of Anne Jean Cannon by and through John Cannon and Frances Cannon, executors of the estate of Anne Jean Cannon v. Watermark Retirement Communities, Inc. et al. Appellants, Ms. Miller for appellants, Mr. Becker-Parapolis. Morning, Counsel. Ms. Miller, please proceed whenever you're ready. Thank you, Your Honor. May it please the Court, Amy Miller on behalf of appellants, I'd like to reserve three minutes for rebuttal. The issues in this appeal of jurisdiction and immunity are both guided by the plain language of the PREP Act. I'll briefly address jurisdiction first and then turn to immunity. With respect to jurisdiction, I'd like to make a couple of points, especially following on Judge Pillard's point about the plain text. The first point really is the plain text of E10. This is the basis for the appeal. E1 through E9 each contain language limiting the scope to an action under subsection D, but E10 very conspicuously does not. In fact, E10 not only omits that reference, it replaces it with reference to subsection A. Subsection A, of course, addresses immunity and not willful misconduct. It says covered persons shall be immune from suit and liability from all claims of loss related to the use or administration of a covered countermeasure. Ms. Miller? I don't think this was covered in the earlier case, but E1 through E9 relate to the district court level and E10 relates to the Court of Appeals. Why would there be language in E10 about in an action under subsection D? I read the language as plainly referring to the appeal that can be brought here only if it's deliberate misconduct. So the fact that that language is omitted shows that Congress did make a choice not to include it in that section, and that is certainly very telling. But it is not the only time in the E section that it was contemplated by Congress that a suit may be initiated elsewhere. As counsel pointed out under E9 sanctions, it does say whenever a district court of the United States determines that there has been a violation of Rule 11. That is another example where Congress, in our opinion, it's not sloppy drafting. It's actually intentional and contemplated that a suit may initiate somewhere other than the DDC. But I'm not sure that that helps you because I don't think that there's dispute that an action under the carve-out in a subsection D action could take place in any district court in a country. And so if one were to confine E10 only to interlocutory appeals from orders in subsection D actions, you would still have them from an array of different district courts, no? Well, certainly when any claim of loss is filed by a claimant, the PREP Act provides that the covered person shall be immune from suit and liability regardless of where it's initiated. I mean, that's plain in subsection A. Congress knew that claims of all shapes and sizes filed in district courts under color of state law and elsewhere may be filed. But the point is that all claims of loss, there is immunity with respect to all claims of loss. Where are you reading the all claims of loss? In A1. Okay, so my reading, I mean, I think this may just be repeating Judge Henderson's question, but unlike subsections E1 to 9, which are addressed to the plaintiffs and what they have to do in framing up a claim under subsection D, I think subsection E10 affords a procedure to defendants and defendants litigating position is the suit is not properly understood to be a suit under subsection D and therefore should be treated as a suit under subsection A. And so that's why it would, that's why E10 refers to immunity conferred by subsection A that it's not, it kicks back in if the claim is not, if the point of the appeal is to say, no, no, we have this wrong. This is not a suit under subsection D. Ergo, it's a suit under A that's immune. So, so I'm just saying that that would be your opponent's argument, how we make sense of both the omission of reference to subsection D, which is in 1 through 9, and the adding of a reference to subsection A. Again, we go back to the fact that Congress intentionally included that phrase in every one of these. Yeah. And it would have been so easy and perhaps logical if it were the intent to say that to take jurisdiction of an interlocutory appeal from a proceeding under subsection D. It's also very telling, but I thought, but I think the point is that it might not have made sense to say that because what the defendant would be saying is this is not a. This is properly considered is not a case under subsection D. I mean, that's your position. Well, if this were a case that had been filed in the three judge court as a, as a D action, and you were representing your client and had had an argument, no, this is not misconduct. This is reverts back to being an ordinary a case at the plaintiff. Sorry. I got the parties misaligned. But right. Well, the subsection D procedures that initiate it properly in the provide for a motion to dismiss or summary judgment, and there is a 3 judge panel. But it is only the issue of immunity on a motion to dismiss that presumably may be appealed to this circuit. It is not broader than that. It is a very narrow scope interlocutory appeal for this port to the denial of immunity statute of limitations. Not whether they're a covered, you know, it's a not whether they fail to exhaust administrative remedies. It's only immunity. And again, that's why it makes more sense. But the rest of the act, particularly if under under a police reading, the, the act would give greater rights and greater protection to defendants accused of willful misconduct as watermark filed a protective appeal in the 3rd circuit. In the event that we don't have jurisdiction, they saw either a 1292 be appeal or a collateral order appeal in the 3rd circuit. No, we know we have this interlocutory appeal was taken directly to this court within 30 days for the statute. Well, you wouldn't have to file a protective notice on it under collateral order. I take it. But under 1292 be, you could still do that. Right? Well, I believe so, but to answer the question, no, we have not done that. But do you see a reason why you couldn't do that if you wanted to? We, we see the exclusive jurisdiction for the mandatory jurisdiction language and as directing. The denial of immunity under subsection a. Under the prep act as this court would be the proper jurisdiction, but it doesn't say shall have jurisdiction only and I'm not sure it's in your client's interest. To read it that way. Given that we haven't ruled yet, it does it does appear to be a mechanism in the statute that gives a covered person the option to pursue that right here as early as possible. And that is certainly the option that we took. And if you suppose, suppose, suppose a defendant in your position misses the 30 days, just inadvertently misses the 30 days. And let's just take 1292 be out of the equation for now. But the defendant still wants to take up the issue of immunity at the end of the case. Well, if at the end of the there's another opportunity with summary judgment, obviously. Right. And let's assume that's right. This is on a dismissed, but let's assume summary judgment. It's just missed. And then it happens at the end of the case. Like, the case goes to a verdict in favor of the plaintiffs and the defendant wants to take up the issue of immunity at that point. You don't dispute that in this case, for example, if this went forward and went all the way to that stage that the immunity of the appeal at the end of the day would go to the 3rd. It would be appropriate to take that up on appeal to the 3rd circuit along with any other issues. The point of each hand is to give a covered person an early opportunity to pursue interlocutory appeal to this court for consistency and for immediacy to get an early answer to have that. But there wouldn't be a consistency because across results, at least, because at least there wouldn't be guaranteed consistency across results, because if it could be taken up to the 3rd circuit. At the end of the case, but it can be taken up to the DC circuit in the middle of the case. Then that seems like an odd dynamic. Well, it is an immediate right of appeal. Congress anticipating that this would be the court, perhaps similar to appeals of administrative actions where because of the expertise and having a central location, there could be consistency in results in reviewing denials of immunity as early as possible in these types of cases. It is our position that these would come from the federal district court to this court. So, your position is it doesn't cover state court actions. We're not advocating. We're not advocating that today. We agree with your honors statement earlier that there are perhaps federalism issues, abstention issues, including the Rooker Feldman doctrine. That would have to be considered in conjunction with with each hand. But that's not those aren't statute doesn't textual arguments. You're just saying that there'd be other things that kick in that would might. Certainly other statutes or other legal principles would be relevant. And can I just get clarification on E9? Yeah, on E9, it does say whenever a district court of the United States determines that there's been a violation of rule 11 in an action under subsection D. So, does E9 apply outside of an action under subsection D? E9 appears to be confined to subsection D proceedings, but it does allow that a suit may have been initiated in the court. So, you think that a D action can only be brought in the DDC? Correct. But what E9 covers when it says whenever a district court, I see, is that it covers an action erroneously brought in a different district. That's correct. And I mean, I'm drawing attention to that for the broader point that Congress anticipated both in E9 and in A1 that suits may be initiated in various different venues. The point is that all claims of loss have immunity for covered persons when there is a demonstration of a covered countermeasure. What about E6 where it's clearly limited to subsection D claims and it talks about in the event of a covered person files an interlocutory appeal, when they do not have such motion, the discovery shall, no discovery shall be allowed. So, it's staying discovery in a subsection D interlocutory appeal. It seems like that is not a slam dunk, but it's a textual cross reference to subsection D interlocutory appeal. There is. I mean, there's certainly the argument that subsection D proceedings that covered persons under those facts would have interlocutory appeal to this court as well. And to the extent E1 through E9 are talking about other aspects of those misconduct proceedings, it would be appropriate to reference that there may be an interlocutory appeal. But I guess I'm pointing out that under your reading, you can take an E10 interlocutory appeal unrelated to subsection D claim, but instead at the threshold between does PREP Act immunity apply or is this not a PREP Act case at all? And in that situation, discovery would not be stayed by E6. Well, the way E10 is worded is that if there is a denial of immunity by a covered person, where the denial of immunity, the assertion of immunity is made under subsection A, that is enough to confer jurisdiction in this court for an immediate interlocutory review of that. But it's odd. Well, go ahead and finish your answer. I'm sorry. I just interrupted you. So it would not require, for example, a preliminary determination of whether the PREP Act applies? Well, all I'm saying is that there's sort of two different boundaries where parties disagree about immunity. One is whether the PREP Act applies at all or if it's not a PREP Act case, then the appeal could be this should be under the PREP Act. You're representing your clients. Plaintiffs are saying, no, no, it shouldn't be because emergency use authorization wasn't met or whatever. Or the immunity question can happen as between a D case that's proceeding or no, no, there's not enough pleading of the kind of willfulness that would allow a D case in a three-judge DDC court. So it is there's immunity under the PREP Act. So there's sort of these two different boundaries. And my understanding is that the first boundary, does the PREP Act apply or not? Under your reading, there's an interlocutory appeal to our court from a denial of that immunity from basically from a district court saying that doesn't even apply here. And all I'm saying is the way you're reading the statute, you in that case, when you're appealing from that order, discovery goes forward. Whereas when you're appealing from a district court saying the D claim can go ahead and you're saying, no, no, that should not go ahead. Discovery is stayed because E6 is expressly limited to a claim under subsection D. Does that make sense? I know that was long winded. Well, it does make sense. And I agree it's silent whether if the action initiated in another district court, if discovery or other issues are also stayed is more specific. And that seems anomalous to me that Congress would not have provided for discovery stay there, but would have in E be provided for this interlocutory appeal. But in the context of E6, Congress really does get into the weeds with, you know, limits and timing of discovery and caps on damages and other things in E1 through 9. It does make sense there that if we're going to talk about the amount of discovery and what the burden threshold is and the timing of it, it would be acceptable to go ahead and address that discovery is stayed during an interlocutory appeal. I don't believe that rules out that an interlocutory appeal can and should be taken from another district court just because proceeding where immunity was asserted was initiated there, probably initiated there improperly. But in many cases, or in most cases, I would think, including ours, discovery is is stayed in the court is taking the district court is taking the position that for now, it does not have jurisdiction of the case until the appeal is resolved here. Okay, let me make sure my colleagues don't have additional questions for you at this time and we'll give you your rebuttal time. And we'll hear from the police now. Thank you, Miss Miller. Rebecca. Thank you. Honors, may it please the court. Jake Becker on behalf of appellee plaintiffs and Gene Cannon in the estate of Angie. The record is clear that the complaint raises five separate causes of action, only one of which is solely based on the administration of hydroxychloroquine to Miss Cannon. But the other four counts raises state claims of negligence based on 14 specific negligent actions and inactions by watermark at the end of the administration of hydroxychloroquine is only implicated and one of the 14. At the outset, it is noteworthy that appellants now seek this court to assert jurisdiction over both the claims related hydroxychloroquine and the unrelated state negligence claim. None of the aforementioned claims were brought into the prep app, nor do they implicate that community any immunity provided by the prep app. In light of that, I'd like to address your honors question about how section E10 is meant more for defendants rather one through nine is meant for the plaintiff. That reading is precisely why E10 must be limited to cases brought under subsection D. E1 through nine, although it does include the preparatory language, is meant to dictate how you bring a claim under subsection D. Subsection 10, yes, does not have that preparatory language. However, it is meant so how a defendant can appeal and essentially transfer a case brought under D and saying, no, this isn't willful misconduct. It should have been an A1 claim. So in that regard, preparatory language included here would have only added more confusion and not less. Well, it could have been done clearly. I mean, you know, a court of appeals, the District of Columbia Circuit shall have jurisdiction of an interlocutory appeal by a covered person taken within 30 days of an order. In an action brought pursuant to subsection D denying a motion to, you know, they could have as as Congress did with the other provisions referred to the action of the plaintiffs and framing it and then given the defendant. But so they didn't do that. So I think the strongest argument, your biggest hurdle is the text. I would agree, Your Honor, that the statute could certainly have been drafted more clearly. However, either interpretation to read it in favor of the appellants, you would have to read in that is applying to section A1 claims as well, not limiting the section D claims. And Your Honor has pointed out before in referencing the Guam matter is really instructive for how the court should read this when the preparatory language is missing. It should not be read in isolation. An effort to tear away the companions based on a negative implication alters in light of the other strong text around it. And even more importantly, I would refer to Justice Gorsuch writing for an opinion of the court of all eight justices as Justice Kavanaugh was not participating in that decision. We've long stressed the significance of a statute's sequence of provision. Which case are you talking about? That would be New Prime, Inc. versus Oliviaria. I was going to say, I didn't think Justice Gorsuch wrote Guam. No, Your Honor, I believe that was Justice Thomas. Yeah. And in New Prime, there were sections one and two were describing what was being legislated, and then three and four were applying. That's precisely what's happening here. Subsection D is creating a new cause of action. And Congress, as they created this new cause of action, realizes, presumably, that they needed to provide the court with parameters for how that action should go. One through nine dictates how plaintiff brings the case. And E10 dictates how a defendant, if they thought it was improperly brought, can appeal. So, on the point that you started with, which is that if Congress had used the same clause in an action under subsection D in 10, it would have been confusing. I'm not sure I completely follow that, because I thought where that was going was, there's a difference between an action that belongs under subsection D and an action that might have been brought under subsection D, but actually turns out not to be one that belongs under subsection D. That is correct, Your Honor. And if that's the distinction, isn't that also true of all the other provisions, too, under E? In other words, E1 says, or a lot of the other provisions speak in terms of actions under subsection D. But even in cases in which those provisions are applied, there's still going to be an underlying question as to whether the case is, in fact, one that belongs under subsection D. Except, Your Honor, in one through nine, that's dictating how plaintiff would bring that case. So, if you're bringing it under subsection E, you've already made that affirmative choice, where subsection E10 is for the defendants to say plaintiff had improperly brought this claim. Plaintiffs under E10 wouldn't claim that the claim was imprudently brought. I guess all I'm saying is then it seems to me, and I just may be missing it, but it seems to me that under one through nine, when it says action under subsection D, it's already reading into it an action that the plaintiff has chosen to bring under subsection D. And that's already read into it. And so if the same language were used in 10, then it would be the same thing, that it's just an action that the plaintiff chose to bring under D. Now, that might turn out to be something that the court decides was improper, but it's still all an action under subsection D means is not whether it's properly under D. It's just something that the plaintiff chose to bring under D. And, Your Honor, I understand your reading of that for that provision for E10. However, it would not be the case when read in a sequence. If you look at the provisions as a whole, one through 10, that reading would not come to light in the same manner. And in addition to the statutory structure of this provision, the court should also look at the untenable and unworkable result that you already highlighted in your earlier questions, if, in fact, this E10 is to refer to all claims of immunity. As Your Honors have noted, the jurisdiction will, like a ping pong ball, be bouncing back and forth based on how the motion is granted and when the appeal is brought. Certainly, Congress is not intending to put litigants in the untenable position where there could end up being conflicting case law. For example, in this matter, if the court were to find improperly that PrEP Act immunity is afforded to the appellant, however, in a companion case, the party chooses to go through trial and then appeals to the Third Circuit, the Third Circuit could reach a separate result. And then future district court cases in the Eastern District are going to be left in the position where no matter how they rule in a motion, they're going to be committing reversible error. Would there also be the circumstance that the defendant, if the defendant likes the law better in one circuit than the other, and the defendant has the alternative of either taking an appeal, attempting an appeal under 1292B or under E10, then the defendant could figure out which court it wants to go to by choosing which procedural vehicle it's going to use? Certainly, Your Honor. Appellant's view of the statute will lead to form-shopping. That is undeniable. They would still have 1292B is not automatic by any stretch. So you're still running a risk if you try to go by 1292B. I assume that you don't think 1292B is automatic because I assume you'd oppose it if the defendant saw it here. Is there any reason to think they couldn't have a co-in collateral order appeal in the Third? We would argue on the merits, Your Honor, that we would oppose that on the merits. We would not oppose it on the procedure. On the, on the, you think there, I thought that in the previous argument that you would oppose the existence of a collateral order appeal. Or am I wrong? Or maybe that's just, you don't, maybe we shouldn't commit you to this. But on, do you think that there is a collateral order appeal? We would want to analyze that appeal before commenting on that specific appeal, Your Honor. In some, as it relates to jurisdiction, the reading of E10 when read in sequence clearly indicates that it is only for Section D cases. However, the court needs to look beyond the presumably ambiguous language due to the lack of a preparatory clause. In looking at the results, it's clearly, as Your Honor had indicated with your question, it's going to lead to form shopping and it's going to put the district courts and litigants in an impossible position of being reversed regardless of how it is brought or how it is ruled upon. To the extent that you're relying on Guam, what's the anchor provision? So in Guam, the Supreme Court referred to an earlier anchor provision that colored the way it looked at the following provisions, such that the lack of a specific reference to CERCLA in the case about seeking contribution where somebody has settled, the court said, well, we should understand that to be where they've settled CERCLA liability. What's the anchoring, the analogous anchoring provision here? Really, the anchor, Your Honor, I would refer, as Judge Hrabowski highlighted earlier today, that the title of Section E is procedures for suit, and that procedure for suit is immediately following subsection D. So Congress is putting into the statute a new cause of action, and then they are outlining the procedures for bringing a suit under that cause of action. So here, Congress kind of tipped their hand in labeling these and sequencing these in the manner in which they did. It is meant to be read as a whole in context, going, this is our new cause of action, and this is how it is to be brought by plaintiffs, and if it's believed brought improperly by plaintiffs, this is how it will be subject to an interlocutor. This court simply does not have jurisdiction over the pending matter. However, if this court does determine that a merits analysis is appropriate, it should find that PREP Act immunity does not attach the actions of Watermark and the record before it for two primary reasons. First, the record establishes that Watermark's use of hydroxychloroquine did not meet the HHS declaration on limits on distribution requirements, and second, Watermark's use of hydroxychloroquine does not fall within the population condition of the declaration, and thus it cannot be deemed to be acting in accordance with the declaration. I thought you were really relying on the emergency use authorization. So when you refer to the declaration, are you reading it as incorporated in the terms of the emergency use authorization? Yes, Your Honor. And walk us through that. I mean, I know you briefed it, but just walk us through the short version. Sure. So the declaration limits liability for covered countermeasures as they relate to either, one, a federal agreement or contract, or two, recommended activity involving a covered countermeasure in accordance with a public health response. Here, the EAU was the public health response, and it gave very specific parameters for how hydroxychloroquine was to be used and administered. And specifically, there's no dispute that the FDA authorization upon which they would rely was meant to treat COVID-19 patients only in a hospitalized setting who were ineligible for clinical trials and finally were 50 kilograms or more. Ms. Cannon was not hospitalized. She did not weigh more than 50 kilograms, and the record is devoid of any analysis of whether she would have been eligible for clinical trial. So is your understanding, I mean, in some ways, a nursing home is like a hospital, but is it your understanding that the threshold there is because the treatment itself was understood to have risks and limit it to people who are in hospital and also weren't eligible for trials was sort of like, if this is really the last thing for someone who's seriously, seriously ill? Yes, Your Honor. And the parameters for why they gave it was this was meant to be a last resort. This was not meant to be given to asymptomatic patients like Ms. Cannon in a setting where if something goes wrong, they're ill-equipped to do so. And I anticipate, as they raised in their brief, they're going to claim access under the safe harbor provision on the merits argument. However, the safe harbor provision still requires that the individual be within the population identified in the declaration or authorization. Here, it is clear and indisputable that the facts before this court that Ms. Cannon fell well outside of the population requirement. And, Your Honor, I hear your question to say, is there any way that could have seemed like a hospital? The declaration made clear in a hospitalized setting only. It didn't say hospitalized or other medical facility or to any person providing treatment. And it's noteworthy in Appellant's brief that they said they were preparing, that they received guidance that nursing homes should not transfer patients to the hospital and should prepare for an influx of patients. They were already being told by the government that they are not a hospital and that they are going to have to keep their patients there. What about their argument that they were under a conflicting obligation when a doctor has prescribed a measure to administer it? Yes, Your Honor, I'm glad you raised that question because that actually goes to whether or not they were negligent, not to whether they would enjoy PrEP Act immunity. However, as that issue has been brought up, they are also under a state obligation to obtain informed consent from their patients. Here, in this case, as the record clearly establishes, not only did they not receive informed consent, they affirmatively had consent withheld by Mr. Cannon for medical proxy for his mother. He said, do not give my mother this medication. She has underlying heart conditions that will react poorly. Unfortunately, he was correct. Then the use of that medication led to cardiac arrest and ultimately her untimely death. What's your understanding if someone had claims about the willful abuse of a countermeasure that would fall within D and have to be filed in the three-judge court in D.D.C. and also had other state law claims like Ms. Cannon's claims of negligence and failure to care for her in the unrelated to covered countermeasures? How do you bring that to you? Do you just bring two different cases? Yes, Your Honor, because there's nothing that would confer jurisdiction over those state negligence claims to the D.C. Circuit Court of Appeals where that subsection D claim would have to be covered. Or the D.D.C. in the first instance, they couldn't be just pending jurisdiction under ordinary 1367? I believe plaintiffs could possibly waive that issue, but the cleaner way to do it would be to sever the claims and treat them differently, which in the event that this court finds jurisdiction and finds that it was a willful misconduct claim, then I would suggest that the state court negligence claim should remain in the Eastern District. None of their claims should be severed and brought there. However, that's not the case here. This was not a willful misconduct claim as the population requirement was not met. Thank you. Thank you, Mr. Becker. Ms. Miller, we'll give you three minutes for rebuttal. Moving to the issue of immunity, that issue is also guided by the plain language of the Act in that this really was a classic example of a covered countermeasure under the Act. Hydroxychloroquine, which I'll call HCQ for purposes of the argument, was a covered countermeasure under two different prongs of the PREP Act, one, it being a qualified epidemic and pandemic product, and the second, that it by virtue of its emergency use authorization. The error in the district court's opinion… But you only preserved the emergency use authorization claim. You didn't preserve below the other claim. We did raise the full definition of the covered countermeasure below in several places. Certainly, we actually briefed it at length in the removal at JA-14, JA-15, also JA-21. We discussed the covered countermeasure as both FDA-approved and under emergency use. In the motion to dismiss at JA-303 through 306, we talk about covered countermeasures being used as existing drugs, not new drugs that are approved for the first time under emergency use. And then we also raise it again in the answer. And then the district court, of course, squarely addressed it. It's in footnote 3 of the JA-569, where this is the nature of the error. She noted that basically if we're talking about a drug as opposed to a product, that it needs to be considered under emergency use. But what the district court didn't do was look at the further definition of qualified pandemic and epidemic product, which under subsection 7 makes clear it can be a product or a drug or a device. So HCQ in this case did constitute a covered countermeasure under two different prongs of the PREP Act, one of which emergency use, which had the restriction, the non-hospital, excuse me, the hospital setting. And then the other, it was already FDA-approved. It had been approved for decades and was used more to treat, more for symptom management. So you don't dispute that to the extent that you're relying on the declaration, one would have to follow the emergency use authorization conditions? We absolutely dispute that. The immunity, and this is another part of the district court's error in that the court determined that HCQ was not even a covered countermeasure because it did not comply or it was not used in accordance with the EUA. However, the fact of the authorization, the fact of the emergency use authorization under that definition of a covered countermeasure is enough to constitute a covered countermeasure. The proper question, which was not framed correctly in the opinion, is whether strict compliance with the use authorization gets you immunity. For that, you need only look at the PREP Act and the declaration requirements and was she in the population. The population was defined so broadly by the Secretary for this particular COVID-19 emergency by stating that if the recipient received the covered countermeasure, essentially that's enough to put the individual in the population. I think what council is raising is a separate element and that is the recommended activities portion of the limitations on distribution, which is in declaration and it's in the advisory opinion. But it's very clear under those documents that there's no strict compliance. It says this is not a strict compliance statute. It's not a strict compliance requirement. And the secretary even gave several examples of where errors were made. All guidelines were not followed. For example, in the advisory opinion that we cited in our brief, there's an example of a pharmacist who purchases and prescribes testing kits. And there's a lawsuit and it turns out that the pharmacist had let their license lapse. That's a pretty egregious error. The secretary said in that case the pharmacist does not lose liability just because not all requirements were met. There is a concept of reasonable precautions. And here the hospital requirement was not even in the regular FDA approval prong of the covered countermeasure. Thank you, Ms. Miller. Let me just make sure my colleagues don't have additional questions for you. No. Thank you, council. Thank you. Thank you to both council. We'll take this case under submission. Thank you.
judges: Srinivasan, Henderson, Pillard